Patrick M. Flatley
United States Bankruptcy Judge

**Dated: Tuesday, January 13, 2015 4:27:28 PM**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SHAFER BROS. CONSTR. INC., | ) | Case No. 14-bk-17 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |

### <u>MEMORANDUM OPINION</u>

Todd Johnson and John Wiley (collectively, "Debtor's Counsel") each seek compensation from the Debtor's bankruptcy estate for services they rendered to the Debtor and its bankruptcy estate primarily while this case was one under Chapter 11. They seek to be compensated, in part, from a $20,000 retainer currently in Mr. Johnson's client trust account. The Milan Puskar Revocable Trust Restated September 28, 2011 ("MPRT") objects that the compensation sought by Debtor's Counsel is not reasonable, that any approved compensation should not be paid from the $20,000 retainer because it constitutes MPRT's cash collateral, and its interest in the retainer is superior to any claim of Debtor's Counsel.

For the reasons stated herein, the court will award Mr. Johnson and Mr. Wiley with reasonable compensation in amounts to be determined. Additionally, Mr. Johnson may apply the $20,000 retainer to his approved compensation.

### I.  BACKGROUND

The Debtor is indebted to MPRT by virtue of four Commercial Promissory Notes in the original principal amounts of $2,463,104.43, $1,500,000.00, $442,994.13, and $800,000.00, respectively. To secure the Notes, the Debtor granted MPRT a security interest in substantially all of the Debtor's real and personal property, including accounts receivable, contract rights, general intangibles, and proceeds. To perfect its security interest in the Debtor's personal property, to the extent it could, MPRT filed financing statements in accordance with the Uniform Commercial Code ("UCC").

1

In contemplation of seeking relief under Chapter 11 of the Bankruptcy Code, the Debtor paid to Mr. Johnson's law firm a total of $21,213, which was comprised of a filing fee of $1,213 and a $20,000 security retainer to compensate Mr. Johnson for work performed and to be performed in conjunction with its bankruptcy case.[1]  The Debtor paid the $21,213 to Mr. Johnson by two checks, one in the amount of $10,000 paid on December 12, 2013, and one in the amount of $11,213 paid on December 27, 2013, which Mr. Johnson deposited into his law firm's trust account.  By the time he received the first $10,000, Mr. Johnson had already provided $2,250 worth of services and incurred $59.00 worth of expenses in conjunction with his representation of the Debtor.  Prepetition, Mr. Johnson provided a total of $5,950 worth of services representing the Debtor.

On January 6, 2014, the Debtor filed its Chapter 11 petition.  In conjunction with the petition, the Debtor filed several motions, including a "Motion to Use Cash Collateral" and a application to employ Mr. Johnson, Mr. Wiley, and their respective law firms as bankruptcy counsel ("Application to Employ").  Regarding the Application to Employ, Mr. Johnson and Mr. Wiley each swore under penalty of perjury at that time that both of them, and their respective law firms, were disinterested persons eligible for employment by the Debtor's Chapter 11 bankruptcy estate.  On February 12, 2014, the court entered an order authorizing the bankruptcy estate's employment of Debtor's Counsel on an interim basis.  The court, however, required Mr. Johnson and Mr. Wiley to each file separate, amended applications for employment and attach affidavits thereto describing the expected division of duties and responsibilities between them and separate disclosures of compensation as required by Fed. R. Bankr. P. 2016.  Both amended applications indicate that Mr. Johnson would be primarily responsible for drafting the petition and schedules, communicating with stakeholders in the case, assisting the Debtor with drafting and filing operating reports, and otherwise advising the Debtor.  Mr. Wiley would be primarily responsible for drafting the anticipated Chapter 11 disclosure statement and plan, negotiating, and otherwise

---

[1]  The Debtor did not pay a similar retainer to Mr. Wiley.  Notably, both Mr. Johnson's and Mr. Wiley's respective applications for compensation indicate that no agreement exists between them for the sharing of compensation.  As such, Mr. Wiley has no interest in the security retainer paid to Mr. Johnson and can only be compensated, to the extent compensation is authorized, from assets of the bankruptcy estate according to the priority of distribution in 11 U.S.C. § 726. Because the dispute between Mr. Johnson and the Trust involves issues not pertinent to Mr. Wiley's application for compensation, the court will dispose of Mr. Wiley's application by a separate order.

advising the Debtor.  The affidavits attached to Mr. Johnson's and Mr. Wiley's respective applications again indicated that they were each a "disinterested person" as that term is defined by the Bankruptcy Code.  In April 2014 and in the absence of any timely objection, the court entered orders authorizing the bankruptcy estate's employment of Debtor's Counsel.

Regarding the Debtor's Motion to Use Cash Collateral, the court held a hearing on January 31, 2014. At the hearing, the Debtor and MPRT indicated at that time that they anticipated filing an agreed order regarding the use of cash collateral.  On February 5, 2014, the court thus ordered that the Motion to Use Cash Collateral be held in abeyance pending a request from the Debtor for a hearing regarding the motion.  The Debtor never made such a request, and on April 25, 2014, the Debtor filed an "Agreed Interim Order Upon Emergency Motion of Debtor for Order Authorizing Use of Cash Collateral" (the "Cash Collateral Order"), which the court entered on April 29, 2014.  Notably, at no time between the Debtor's filing of its voluntary Chapter 11 petition and the entry of the Cash Collateral Order did MPRT seek to restrict the Debtor's use of its cash collateral.  Ultimately, the Debtor voluntarily moved to convert its case to one under Chapter 7 on July 16, 2014, which the court granted by order dated August 13, 2014.

## II.  DISCUSSION

Here, MPRT disputes the reasonableness of the compensation sought by Debtor's Counsel and whether Debtor's Counsel may be paid, to the extent the court finds the compensation to be reasonable, from the $20,000 retainer located in Mr. Johnson's client trust account.  The court must thus first determine the reasonableness of the compensation sought by Debtor's Counsel.

**A.  Reasonable compensation under 11 U.S.C. § 330(a).**

Mr. Johnson and Mr. Wiley each seek compensation from the bankruptcy estate for services rendered to the Debtor and the bankruptcy estate from December 1, 2013, through July 23, 2014, and August 1, 2014, respectively.   MPRT objects based upon the alleged unreasonableness of the compensation sought.  Specifically, MPRT asserts that: (1) both Mr. Johnson and Mr. Wiley hold prepetition claims against the bankruptcy estate as a component of their respective applications for compensation and therefore cannot be compensated from the estate; and (2) the services Debtor's Counsel rendered to the estate provided little benefit to the estate; and (3) the time records Debtor's Counsel submitted in support of their respective

applications for compensation are too vague to warrant the award of compensation.

"[S]ubject to §§ 326, 328, and 329 [of the Bankruptcy Code], the court may award" reasonable compensation for actual and necessary services rendered and expenses incurred by professionals employed by the bankruptcy estate under § 327.   11 U.S.C. § 330(a)(1).   To be employed by the bankruptcy estate under § 327, a professional must file an application in that regard and a verified statement in support thereof "setting forth the person's connections with the debtor, creditors, or any other party in interest . . ." so that the court can adjudge whether they qualify for employment under § 327.   Fed. R. Bankr. P. 2014.   Importantly, an entity holding a prepetition "claim," which includes a "right to payment," 11 U.S.C. § 101(5), against the debtor is not a "disinterested person."   11 U.S.C. § 101(14)(A).   And the court may deny compensation to professionals employed under § 327 "if, at any time during such professional person's employment . . . such professional person is not a disinterested person . . . ."   11 U.S.C. § 328(c).

As noted by a leading treatise,

> The decision whether to deny fees to a professional who is not disinterested is within the discretion of the bankruptcy court.   For example, in *Electro-Wire Products, Inc. v. Sirote & Permutt, P.C. (In re Prince)*, [40 F. 3d 356, 359-60 (11th Cir. 1994),] the Court of Appeals for the Eleventh Circuit held that the bankruptcy court's power to deny fees under [§] 328(c) is permissive and should not be rigidly applied in the absence of actual injury or prejudice to a debtor's estate.

3 *Collier on Bankruptcy* ¶ 328.05[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (footnotes omitted).

A split of authority exists, however, regarding whether § 328(c) applies to a situation, as here, where a professional was not disinterested at the time employment commenced.   *See In re Mitchell*, 497 B.R. 788, 792-93 (Bankr. E.D.N.C. 2013) (identifying and discussing a circuit split regarding § 328(c)'s application).   Some courts have held that "the decision to grant compensation is governed by § 330(a) and that provision, like § 328(c), clearly requires a valid appointment under § 327(a) as a prerequisite to an award of compensation."   *Id*. (quoting *Michel v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.)*, 44 F.3d 1310, 1319-20 (6th Cir. 1995)(internal citation omitted).   Other courts have determined that such a rigid rule is unnecessary based upon the plain meaning of § 328(c) and the fact that "bankruptcy courts are courts of equity."   *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 838 (7th Cir. 1998); *see* 11 U.S.C. §§ 328(c) and 330(a)(1) (using the permissive word "may" when

giving the bankruptcy court authority to award or limit compensation to professionals). The court finds the Seventh Circuit's analysis in *In re Crivello* to be better reasoned based upon the use of the permissive word "may" in §§ 328(c) and 330(a)(1) and the bankruptcy court's appropriate application of its discretion when compensating professionals. That discretion undermines the need for a rigid rule like that articulated in *In re Federated Dep't Stores, Inc.*, 44 F.3d at 1319-20. Moreover, the court's discretion surrounding the award of compensation does not vest it with the ability to revisit its order employing counsel; rather, §328(c) provides a mechanism to police the disclosure requirements of Fed. R. Bankr. P. 2014(a); *See In re Crivello*, 134 F.3d at 837-40. The court will thus examine the circumstances surrounding Debtor's Counsel's failure to adequately disclose their claim against the estate and the court's inadvertent approval of their employment by the bankruptcy estate as a result thereof.

Debtor's Counsel originally filed a single application on the Debtor's behalf to employ both of them as counsel to represent the bankruptcy estate. In paragraph four of the affidavit attached to their application, Mr. Johnson and Mr. Wiley represented to the court that they were each a disinterested person. By order dated February 12, 2014, and in the absence of any objection, the court granted Debtor's Counsel's application for employment on an interim basis and ordered that they each file separate disclosures of compensation required under Rule 2016 and amended applications with affidavits regarding their anticipated division of labor. Regarding the division of labor between them, Debtor's Counsel's amended applications for employment indicate that while they represented the bankruptcy estate Mr. Johnson was responsible for the following: most of the petition and schedule drafting, communications with the client and other interested parties, drafting the Debtor's operating reports, serving and filing documents, and otherwise counseling the Debtor. Mr. Wiley was responsible primarily for drafting the Chapter 11 disclosure statement and plan, negotiating, and otherwise counseling the Debtor.

The affidavits attached to the amended applications again indicated that both Mr. Johnson and Mr. Wiley were disinterested persons at that time. In April 2014, and again in the absence of any objection, the court entered separate orders authorizing Mr. Johnson's and Mr. Wiley's employment as counsel for the bankruptcy estate. At that time, however, the court was unaware that Debtor's Counsel held pre-petition claims against the bankruptcy estate. It was not until Mr. Johnson and Mr. Wiley filed their respective applications for compensation, and more

particularly not until MPRT identified the issue in its objection thereto, that the court learned that
Mr. Johnson and Mr. Wiley hold such claims.  During the hearing held regarding the respective
applications for compensation, Debtor's Counsel indicated that they hold pre-petition claims
against the bankruptcy estate because they thought that the court had to approve all
compensation, including that for prepetition services, such that they believed that they could not
be paid for pre-petition services until they obtained, postpetition, court approval of their fees and
expenses.[2]

The court finds this explanation to be sufficient to allow Debtor's Counsel to seek
compensation from the bankruptcy estate.  Mr. Johnson and Mr. Wiley have practiced before this
court for many years, and the court is confident that they, as officers of the court, did not
intentionally act to misrepresent or otherwise obfuscate the record surrounding their employment
by the bankruptcy estate.  *See In re Crivello*, 134 F.3d at 839 ("Before a bankruptcy court elects
to award . . . payment to a law firm or other professional that was improperly employed, it should
consider whether the professional's failure to disclose was intentional.").  The court will thus, in
its discretion, permit Debtor's Counsel to be compensated from the Debtor's bankruptcy estate.
Having made that determination, the court must determine the reasonableness of the
compensation sought.

Regarding the amount of reasonable compensation to be awarded to a professional
employed by the estate,

> the court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including—
>> (A) the time spent on such services;
>> (B) the rates charged for such services;
>> (C) whether the services were necessary to the administration of, or
>> beneficial at the time at which the service was rendered toward the completion of,
>> a case under [title 11];
>> (D) whether the services were performed within a reasonable amount of
>> time commensurate with the complexity, importance, and nature of the problem,
>> issue, or task addressed;
>> (E) with respect to a professional person, whether the person is board
>> certified or otherwise has demonstrated skill and experience in the bankruptcy
>> field; and

---

[2]  As noted by counsel for MPRT, maybe a better practice as debtor's counsel is to ensure that
there are no fees and expenses due and owing as of the petition date.

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [title 11].

11 U.S.C. § 330(a)(3).   In addition to the factors set forth in § 330(a)(3), the U.S. Court of Appeals for the Fourth Circuit has instructed bankruptcy courts to review fee applications in light of the following twelve factors (the "*Johnson* factors"):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorneys' fees awards in similar cases.

*Harman v. Levin*, 772 F.2d 1150, 1151 n.1 (4th Cir. 1985) (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).   Because the language in § 330(a)(3) instructs the court to "tak[e] into account all relevant factors," the court will consider the *Johnson* factors in addition to those articulated under § 330(a)(3).  *In re Grubb*, No. 07-30253-KRH, 2010 WL 396181, at *4 (Bankr. E.D. Va. Jan. 25, 2010).

The applicant has the burden of demonstrating that the fees and expenses requested are reasonable, *In re Goodbar*, 456 B.R. 644, 648 (Bankr. W.D. Va. 2011) (citation omitted), and "[t]he determination of what is a reasonable amount of compensation is within the sound discretion of the court."  *Id*. (citing *In re Breeden*, 180 B.R. 802, 808 (Bankr. N.D.W. Va. 1995)); *see Berliner v. Pappalardo (In re Sullivan)*, 674 F.3d 65 (1st Cir. 2012).  Notably, compensation is not allowed for services that were unnecessarily duplicative, not reasonably likely to benefit the debtor's estate, or unnecessary to the administration of the case.  11 U.S.C. § 330(a)(4)(A); *but see* 11 U.S.C. § 330(a)(3)(C) (guiding the court to determine whether services rendered were necessary or beneficial at the time at which the service was rendered).

Here, Mr. Johnson and Mr. Wiley each submitted time records outlining the services they rendered to the estate.  MPRT contests the allowance of compensation because it asserts that the services rendered were not reasonably likely to benefit the debtor's estate as evidenced by the failure of the Debtor to ultimately obtain confirmation of a Chapter 11 plan.  Additionally,

MPRT asserts that the court should not award compensation because the time records attached to Mr. Johnson's and Mr. Wiley's respective applications are vague and imprecise such that it is unable to determine whether such services are compensable.

The primary factors considered by the court in this case are the time spent providing services, the rates charged for those services, and whether compensation is reasonable based on the customary compensation charged by similarly skilled practitioners.[3]  Specifically, the court finds that the time spent by Mr. Johnson and Mr. Wiley, 128.2 hours and 72.9 hours, respectively, is reasonable.  As noted by MPRT in its respective objections, Debtor's Counsel's time records are replete with entries relating to communication with various entities, including each other, the Debtor's principal, and various creditors.  Although the entries may be vague and combined with other services performed, it is the court's experience that small Chapter 11 cases like this one often require a lot of communication, particularly with the debtor and its creditors. The court will thus not find the compensation to be unreasonable absent some apparent basis for believing that Debtor's Counsel did not perform the services.  Additionally, Debtor's Counsel each billed the bankruptcy estate at an hourly rate, excluding travel, of $250 per hour.[4]  The court finds this hourly rate to be reasonable, if not modest, based on the common hourly rate for Chapter 11 practitioners of similar experience.  Chapter 11 practitioners in this district often charge hourly rates of $300 or more.  Similarly, the court finds the total compensation to be reasonable based on the customary compensation charged by similarly skilled practitioners in this district.  Debtor's Counsel seeks compensation totaling $50,275 for work performed in conjunction with this case.  The court, based on its experience in Chapter 11 cases of similar size

---

[3]  The court considered the other factors, but finds them to be duplicative of the factors considered or not applicable to this case.

[4]  According to their time records, and despite a single entry by Mr. Wiley to the contrary, Debtor's Counsel each billed for travel at their normal hourly rate of $250.  Absent a compelling reason justifying such a rate for travel, the court permits Chapter 11 debtor's counsel to bill at one-half of their normal hourly rate.  Usually, the court simply makes the adjustment in determining the amount of reasonable compensation.  Here, however, Debtor's Counsel combined their travel with other services provided such that the court cannot make such an adjustment absent supplementation by Debtor's Counsel.  The court will thus order Debtor's Counsel to each supplement their applications for compensation with a statement of time spent traveling, for which they shall charge $125 per hour unless they assert that they are entitled to their full hourly rate because they spent their travel time providing services to the bankruptcy estate.

in this district, finds that aggregate amount to be reasonable, particularly in light of the services performed in the first four months of this case, including: preparing the Debtor's petition and schedules; drafting and filing first day motions and attending a hearing related thereto; representing the Debtor at the meeting of creditors and initial debtor interview; prosecuting and negotiating the ultimate resolution of a contested matter regarding an asset of the estate; and assisting the Debtor in comprising and filing its monthly operating reports. Additionally, rather than allow this case to languish, Debtor's Counsel moved to convert the case to one under Chapter 7 when it became apparent that confirmation of a Chapter 11 plan was unlikely.

Regarding MPRT's argument that Debtor's Counsel's services to the estate were not likely to benefit the estate, MPRT is arguing with the benefit of hindsight. In fact, MPRT states in its objection to the requested compensation that "the services rendered . . . in the within case appear to have provided little to no benefit to the estate." The court, however, is guided by whether the services were reasonable at the time Debtor's Counsel rendered them and not whether they ultimately benefit the estate. 11 U.S.C. § 330(a)(3)(C). The court therefore does not agree that the services rendered by Debtor's Counsel were not reasonably likely to benefit the Debtor's estate at the time Debtor's Counsel rendered them. Although Debtor's Counsel has the burden of establishing the reasonableness of the fees sought, the court will not find, based on hindsight, that the services rendered were unlikely to benefit the Debtor's estate absent such a finding being apparent or sufficiently demonstrated; neither of which are factors in this case.

Chapter 11 debtors often engage in pre-bankruptcy planning, but bankruptcy counsel is often not intimately familiar with the prospective debtor's operations or the viability of a Chapter 11 filing. The court thus disagrees with MPRT that Debtor's Counsel should have known from the inception of the case that the Debtor would be unable to achieve confirmation of a Chapter 11 plan, and that the services rendered were thus not likely to benefit the Debtor's estate. Importantly, this case is not like other Chapter 11 cases in this district that languish for many months. The Debtor filed for Chapter 11 relief on January 6, 2014. The bulk of the services that Debtor's Counsel rendered occurred in the first four months of the case. And by the sixth month postpetition, the Debtor moved to convert its case to one under Chapter 7. The court thus cannot find that Debtor's Counsel acted imprudently in their representation of the estate; nor can it be said that their services were not likely to benefit the estate at the time they rendered such services. The court is similarly unpersuaded by MPRT's argument that compensation should be

disallowed because the time records supporting the respective applications lack precision.  As the court noted above, Debtor's Counsel's time records are imprecise.  However, without condoning the lack of precision, the court finds that counsel's failure does not rise to a level sufficient to warrant a reduction in fees.  *See In re Cole*, No. 10-925, 2013 WL 5429422, at *7 (Bankr. N.D.W. Va. Sept. 30, 2013) (finding certain billing entries (i.e., "long term care.pdf Insurance," "2011 home office.xlsx," and "life insurance.pdf") to be too vague to support additional compensation).  Having determined the amount of reasonable compensation for Debtor's Counsel, the court must now determine whether the $20,000 retainer may be applied to satisfy, at least in part, Debtor's Counsel's fees.

**B.  Disposition of the $20,000 retainer.**

Debtor's Counsel each assert that they have a security interest in the retainer by virtue of the Debtor's pre-petition transfer of the $20,000 to Mr. Johnson's client trust account.  MPRT asserts that its pre-petition security interest is superior to any interest in the retainer that Debtor's Counsel may have because it recorded its interest therein and Debtor's Counsel knew or should have known of the existence of its security interest.  Moreover, MPRT asserts that the retainer constitutes its cash collateral, which it did not authorize the Debtor to use for the payment of attorney fees.  The dispute here revolves around the parties' respective security interests in the $20,000 currently held by Mr. Johnson; MPRT's by virtue of its prepetition security agreements with the Debtor and Mr. Johnson's by virtue of him possessing the funds as a security retainer.

In West Virginia, a lender secured by an interest in a deposit account or cash may perfect its interest therein only through control or possession thereof, respectively.  W. Va. Code. §§ 46-9-312(b)(1) and (3).  And a security interest perfected by control of a deposit account has priority over a conflicting security interests in the same collateral.  W. Va. Code § 46-9-327(a).  The secured party can obtain "control" of a deposit account in one of the three following ways: "(1) The secured party is the bank with which the deposit account is maintained; (2) The debtor, secured party and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party . . . without further consent by the debtor; or (3) The secured party becomes the bank's customer with respect to the deposit account."  W. Va. Code § 46-9-104(a).  Notably, a transferee of money or funds from a deposit account generally takes the property free and clear of a security interest therein, W. Va. Code § 46-9-332, but an attorney who receives funds as a security retainer, which the Parties agree is the type of retainer held by

Mr. Johnson, simply holds those funds for the client and possesses no property interest therein until the fees are earned. *U.S. Tr. v. Equip. Servs, Inc. (In re Equip. Servs. Inc.)*, 290 F.3d 739, 746 (4th Cir. 2002) (citation omitted). Once the fees are earned, however, the attorney has a perfected security interest in the retainer until the fees are paid. *See In re GOCO Realty Fund I*, 151 B.R. 241, 251-52 (Bankr. N.D. Cal. 1993) (noting that by virtue of the UCC, "counsel holding a retainer thus has a validly perfected security interest in the funds in his possession").

When those funds secure representation of a prospective bankruptcy debtor, however, any unearned portion of the retainer becomes property of the debtor's bankruptcy estate upon the debtor filing for relief. 11 U.S.C. § 541(a); *see In re Equip. Servs., Inc.*, 290 F.3d at 746 (citation omitted) ("[T]he retainer so held, less any fees charged against it, constitutes the property of the client."). As property of the debtor's bankruptcy estate, the retainer can also constitute "cash collateral." "'[C]ash collateral' means cash . . . [and] deposit accounts . . . in which the [bankruptcy] estate and an entity other than the estate have an interest . . . ." 11 U.S.C. § 363(a). By virtue of § 1107(a) of the Bankruptcy Code, a debtor can use a lender's "cash collateral" if "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use . . . ." 11 U.S.C. § 363(c)(2).

The parties do not dispute that MPRT possesses security interests in all of the Debtor's personal property. And there is no dispute that MPRT recorded its security interests in July 2008. Notably, however, MPRT did not perfect its security interest prepetition in the Debtor's deposit accounts or cash because the Debtor maintained control of that collateral. Nonetheless, when the Debtor paid the $20,000 to Mr. Johnson prepetition, Mr. Johnson took the $20,000 subject to MPRT's security interest. Significantly, however, Mr. Johnson also acquired a security interest in those funds to the extent that the Debtor owed him for services he rendered to the Debtor as of the date of the payment. And because Mr. Johnson deposited the funds in an account that he controlled, his security interest primed MPRT's because his interest was perfected by virtue of his control of the funds. W. Va. Code § 46-9-327(a). In that regard, the Debtor owed Mr. Johnson $2,250 in fees and $59 in expenses for services rendered as of December 12, 2013, which is when the Debtor made its initial transfer of $10,000 to Mr. Johnson. As of the petition date, the Debtor owed Mr. Johnson $5,950 for services rendered prepetition. Because Mr. Johnson possessed the $20,000 security retainer in a deposit account that he controlled—his Interest On Lawyer Trust Account ("IOLTA")—he held a perfected

security interest in $5,950 thereof to secure the Debtor's payment for services rendered to that point in time.

On January 6, 2014, Mr. Johnson filed the Debtor's voluntary Chapter 11 petition on its behalf and paid the $1,213 filing fee associated therewith. The unearned portion of the $20,000 retainer—$14,050—became property of the Debtor's Chapter 11 bankruptcy estate, which the Debtor controlled as a debtor-in-possession. The bankruptcy estate subsequently employed, in the absence of any objection and with court approval, Mr. Johnson and Mr. Wiley to represent it in this case. During the subsequent months, Mr. Johnson and Mr. Wiley performed legal services for the bankruptcy estate. As Mr. Johnson performed services, his perfected security interest in the $20,000 retainer grew to encompass a larger portion thereof until he eventually performed services beyond the value of the $20,000 retainer. According to the time records attached to his application for compensation, by the end of February 2014, Mr. Johnson performed services and was owed fees therefor in excess of the $20,000 retainer. Although MPRT also possesses a security interest in the $20,000 retainer held by Mr. Johnson, its security interest is inferior to that held by Mr. Johnson because he controls the account in which the money was, and still is, held.

To the extent that MPRT asserts that the Debtor's use of the $20,000 retainer constitutes the unauthorized use of its cash collateral, the court disagrees. In that regard, the Debtor paid the $20,000 to Mr. Johnson prepetition. Because Mr. Johnson took the funds subject to MPRT's security interest, however, the unearned portion of the retainer as of the petition date constituted MPRT's cash collateral by virtue of it and the Debtor both possessing an interest therein. By agreeing to continue the court's consideration of the Debtor's Motion to Use Cash Collateral, which the Debtor filed with its petition, MPRT acquiesced to the Debtor's use—by virtue of its continued operations—of its cash collateral while they worked on a negotiated resolution thereof, which materialized on April 25, 2014, with the submission of an agreed order. Although the cash collateral order relates back to the petition date, it doesn't alter the fact that Mr. Johnson performed services while the case was one under Chapter 11 and that his security interest in the $20,000 retainer grew. And because MPRT knew that the Debtor sought to use its cash collateral, and did not take steps to prohibit its use thereof, the Debtor's use of the $20,000 retainer does not constitute the unauthorized use of its cash collateral. As a result, Mr. Johnson's perfected security interest in the retainer is superior to MPRT's perfected security interest,

assuming it has a perfected security interest.

### III.   CONCLUSION

Based on the foregoing, the court finds that Mr. Johnson and Mr. Wiley are entitled to reasonable compensation in an amount to be determined after they each supplement their applications by specifying the amount of travel time they each incurred while this case was in Chapter 11.   Additionally, because Mr. Johnson possesses a perfected security interest in the $20,000 retainer that he currently holds in his client trust account, he may apply those funds against the amount of his approved compensation.   To the extent that a balance remains due and owing, he holds an allowed Chapter 11 administrative claim.   Mr. Wiley also holds an allowed Chapter 11 administrative claim against the Chapter 7 bankruptcy estate.